# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2354

_____

John Doe,      *
     *
      Petitioner,      *
     *   Petition for Review of an Order
     v.      *   of the Board of Immigration
     *   Appeals.
Eric H. Holder, Jr., Attorney      *
General of the United States,      *
     *
      Respondent.      *

_____

Submitted: January 11, 2011
Filed: August 10, 2011

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

John Doe, an alien proceeding under a pseudonym for purposes of this appeal, petitions for review of a decision by the Board of Immigration Appeals (BIA) that upheld the denial of his application for deferral of removal under the Convention Against Torture (CAT). Doe contends that the BIA evaluated his testimony under an improper legal standard, failed to correct errors by the Immigration Judge regarding the scope of the CAT, and violated his rights under the Due Process Clause of the Fifth Amendment. We deny the petition for review.

Doe is a native and citizen of Mexico. On June 23, 2009, the Department of Homeland Security (DHS) served him with a Notice of Intent to Issue a Final Administrative Removal Order. The Notice of Intent charged that Doe was deportable as an aggravated felon, because he had been convicted of possession of a controlled substance for sale in California on March 3, 2000. *See* 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii). On June 18, 2009, following an expedited removal proceeding, *see* 8 U.S.C. § 1228(b), DHS issued a Final Administrative Removal Order ordering that Doe be removed to Mexico.

Doe requested relief from removal based on fear of persecution in Mexico, so he was interviewed by an asylum officer to determine whether his fear was reasonable. *See* 8 C.F.R. § 1208.31(a)-(c). The asylum officer found Doe credible, but concluded that he failed to establish a reasonable fear of persecution or torture. Doe then requested review by an Immigration Judge (IJ).

The IJ likewise found Doe credible. Initially, however, the IJ concurred with the asylum officer's conclusion that Doe failed to establish a reasonable fear, and advised Doe that he could appeal the decision. Shortly thereafter, when the IJ realized that the decision was not appealable, *see id.* § 1208.31(g)(1), he reconsidered his decision and concluded that Doe *had* shown a reasonable fear of persecution or torture. Accordingly, the IJ vacated the asylum officer's decision, thereby permitting Doe to file an application for withholding of removal under 8 U.S.C. § 1231(b)(3) and for relief under the CAT. *See* 8 C.F.R. § 1208.31(g)(2).

On September 22, 2009, Doe appeared before the IJ for a hearing on his application. *See id.* § 1208.31(g)(2)(i). Doe testified that he had been a member of Espartaco, a special police unit in Mexico. He told the IJ that a substantial majority of the members of Espartaco were corrupt, and that they harmed people who knew too

much about the corruption. Doe submitted a "white paper" and nine newspaper and magazine articles discussing police corruption in Mexico. He also testified that a friend in the unit, who was not corrupt, was shot twice in the back of the head, only to have an investigation of the shooting dropped and the death reported as a suicide.

Doe averred that after he tried to report corruption to one of his superiors, several members of Espartaco attacked and seriously injured him. According to Doe, he was on his way home from work when another car tried to run him off the road. When he stopped, a number of men from the other car approached his vehicle, covered his face, beat him, and stabbed him. One of the men appeared to be wearing a uniform. While the men were beating him, they told him to "keep [his] mouth shut." Doe saw the face of only one man because the attackers covered his head, but Doe said that he recognized the men as members of Espartaco by their voices. Doe also said he knew the men were police officers because of the way they got out of their car and the way they reacted. Doe first testified that he did not recognize any of his attackers by appearance, but on cross-examination said that he recognized one attacker as a member of Espartaco. Doe stated that he could not name any of the attackers.

Doe testified that he is afraid to return to Mexico, and that he believes that he will be tortured or killed if he returns. He told the IJ that sometime after the attack, a group of men broke into his father's house and told Doe's father that Doe should not say anything, and that they will find Doe and kill him. In his asylum application, he identified these men as members of Espartaco, but he did not repeat that assertion at the hearing. He said he thinks the people who attacked him are still involved with the police force, although he had no contacts in Mexico and had not been contacted by members of Espartaco since he left. When asked why he thought that the Espartaco members were still looking for him, Doe said that "[i]t's not going to stop," because of "[t]he information [he] know[s] and the people that are afraid of [him] to turn them in, just the corruption in Mexico City." Doe also claimed that he could not live safely in another part of Mexico, because Espartaco has connections with groups throughout

the country.  Doe acknowledged that his father lives in Mexico and has not been threatened since Doe left, but explained that his father has been in hiding.

The IJ found Doe credible with respect to his subjective fear, but stated that inconsistencies and a lack of details in his testimony and Doe's refusal to take responsibility for his criminal convictions were "damaging to [Doe's] credibility." The IJ concluded that under controlling precedent, Doe's California drug conviction was presumed to be a particularly serious crime that rendered him ineligible for withholding of removal.  *See In re Y-L-*, 23 I. & N. Dec. 270, 274 (A.G. 2002), *overruled on other grounds by Zheng v. Ashcroft*, 332 F.3d 1186 (9th Cir. 2003); *see also* 8 U.S.C. § 1231(b)(3)(B).  The IJ also decided that Doe failed to meet his burden for deferral of removal under the CAT.  *See* 8 C.F.R. § 1208.16(c)(4).  Accordingly, the IJ denied Doe's application and ordered him removed to Mexico.

Doe appealed to the BIA, challenging only the IJ's denial of deferral of removal under the CAT.  The BIA issued an opinion concluding that Doe's "unpersuasive testimony does not meet his burden for CAT eligibility."  The Board cited Doe's inability to provide details concerning the incident in which he was attacked or to supply key dates in his account, and determined that Doe had "not shown that any authorities in Mexico participated in or acquiesced in his prior attack, or even were aware of it, or that such authorities would be more likely than not to participate or acquiesce in such conduct in the future."

II.

A.

Doe was removed to Mexico while this appeal was pending, but we nonetheless have jurisdiction under 8 U.S.C. § 1252(a) to resolve the petition for review.  The Immigration and Nationality Act provides that the removal order not only required

Doe's removal to Mexico, but also rendered him "inadmissible" to the United States for life. 8 U.S.C. § 1182(a)(9)(A)(ii). Although it is now too late for the Attorney General to prevent Doe's physical removal, the collateral consequence of Doe's ongoing "inadmissible" status is sufficient to establish a live controversy. If the petition were granted, then the Attorney General presumably could exercise his discretion to grant the requested relief, and thus to allow Doe to return to the United States despite the prohibition of § 1182(a)(9)(A)(ii). *See Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 385-86 (3d Cir. 2001).

## B.

Because Doe has been convicted of an aggravated felony, we have jurisdiction to review only constitutional claims and questions of law, 8 U.S.C. § 1252(a)(2)(C)-(D), and we review these matters *de novo*. *Freeman v. Holder*, 596 F.3d 952, 957 (8th Cir. 2010). Under the Convention Against Torture, an alien may not be removed to a country in which it is more likely than not that he will be tortured. 8 C.F.R. § 1208.16(c)(4). Torture is defined to include certain "act[s] by which severe pain or suffering . . . is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1). A public official acquiesces in torture when, "prior to the activity constituting torture," the official has an "awareness of such activity and thereafter breach[es] his or her legal responsibility to intervene to prevent such activity." *Id.* § 1208.18(a)(7). An alien applying for protection under the CAT has the burden of proving his eligibility for that relief, and the alien's testimony, if credible, may be sufficient to sustain his burden of proof without corroboration. *Id.* § 1208.16(c)(2).

The CAT provides for two alternative forms of relief from removal. An alien eligible for protection under the CAT ordinarily is entitled to withholding of removal. *Id.* § 1208.16(c)(4). But certain aliens, including those convicted of a "particularly serious crime" and deemed "a danger to the community of the United States," 8

-5-

U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2), are ineligible for withholding of removal. Such an alien is eligible only for "deferral of removal." This form of relief does not confer lawful status or entitle the alien to release from custody, and it may be terminated in the future. 8 C.F.R. §§ 1208.16(c)(4), 1208.17. Doe initially sought both withholding and deferral of removal under the CAT, but he conceded before the BIA that he is ineligible for withholding because of his aggravated felony conviction. Accordingly, the petition for review presents only his claim for deferral of removal.

Doe first argues that the BIA applied the wrong legal standard in deciding whether to credit his testimony. Whether the BIA applied the correct legal standard in weighing Doe's testimony is a question of law over which we have jurisdiction, *see* 8 U.S.C. § 1252(a)(2)(D), and we review the question *de novo*.

The relevant portion of the BIA's opinion stated:

> The Immigration Judge treated the applicant as credible regarding his fear of something happening to him upon his return to Mexico, and we treat him as credible for purposes of this appeal. However, the applicant was unable to provide details concerning the incident in which he was attacked, including the identities or names of any of the attackers. The applicant also had difficulty supplying key dates in his account.

> The applicant's inability to provide such information goes to the persuasiveness of his testimony and, ultimately, to his ability to sustain his burden of proof. In particular, the applicant's unpersuasive testimony does not meet his burden for CAT eligibilty as set forth in *Matter of J-F-F-*, 23 I&N Dec. 912, 917-18 (A.G. 2006); *see also Savchuck v. Mukasey*, 518 F.3d 119, 123-24 (2d Cir. 2008).

Doe reads the BIA's opinion as finding all of his testimony credible for purposes of his appeal, and he contends that once the BIA determined that his

testimony was credible, it necessarily found that all facts stated within the testimony were true. Therefore, according to Doe, the BIA erred by considering separately whether his testimony was "persuasive."

We are not convinced that the BIA expressly found all of Doe's testimony credible. The reference to "treat[ing] him as credible for purposes of appeal" appeared in conjunction with a reference to the IJ's finding that Doe's *subjective* fear of persecution or torture was credible, and we think the BIA's opinion is best read as adopting only the IJ's limited finding of credibility. Nonetheless, while the IJ pointed to factors that were "damaging to [Doe's] credibility," it is not clear that the IJ "explicitly" made an "adverse credibility determination" regarding the balance of Doe's testimony. *See* 8 U.S.C. § 1229a(c)(4)(C). Without such an explicit finding, Doe was entitled by statute to a "rebuttable presumption of credibility on appeal" to the BIA. *Id.*

Even assuming a rebuttable presumption of credibility, however, the BIA did not apply an erroneous legal standard by rejecting Doe's testimony as unpersuasive. According to the statute that governs the alien's burden of proof in a proceeding that seeks protection from removal, 8 U.S.C. § 1229a(c)(4)(A); *see* 8 C.F.R. §§ 1208.2(c)(2)(ii), (c)(3)(i), the immigration judge "will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof." 8 U.S.C. § 1229a(c)(4)(B). (The BIA cited a comparable statute, 8 U.S.C. § 1158(b)(1)(B)(ii), which applies to asylum proceedings.) The statute thus contemplates that an alien's testimony may be "credible" yet not "persuasive," for otherwise the second determination would be superfluous. *See Aden v. Holder*, 589 F.3d 1040, 1044-45 (9th Cir. 2009) (construing comparable text in 8 U.S.C. § 1158(b)(1)(B)(ii)). For the same reason, testimony that is "persuasive" is not necessarily sufficient to satisfy the alien's burden of proof. *Id*. The IJ and the BIA are required to "weigh the credible testimony along with other evidence of record," 8 U.S.C. § 1229a(c)(4)(B), and the

decisionmaker may find that credible testimony is not persuasive or sufficient in light of the record as a whole. *See Aden*, 589 F.3d at 1044-45. Congress thus rejected a rule that "credible" testimony necessarily means that the facts asserted in that testimony must be accepted as true. *Id*. at 1045.

We therefore conclude that the BIA did not err in its treatment of Doe's testimony. The BIA determined that even assuming Doe's testimony was honest or "credible," his inability to provide important details and key dates made the testimony unpersuasive in establishing a likelihood of torture. In light of 8 U.S.C. § 1229a(c)(4)(B), this approach does not constitute an error of law, and we lack jurisdiction to review the BIA's factual determination.[1]

## C.

Doe next argues that the IJ applied the wrong legal standard for relief available under the CAT, and that the BIA failed to correct that error. He complains that the IJ erroneously required him to prove not only that he likely will suffer torture in Mexico, but also that the torture will be on account of his race, religion, nationality, membership in a particular social group, or political opinion. Doe failed to raise this issue before the BIA, however, and even assuming the failure to exhaust does not pose a jurisdictional problem, *see Etchu-Njang v. Gonzales*, 403 F.3d 577, 581-83 (8th Cir. 2005), we see no reason for an exception to the normal requirement that disputed issues be presented on administrative appeal. *Manani v. Filip*, 552 F.3d 894, 900 &

---

[1]Proceeding from the assumption that if his testimony is "credible," then all facts presented in that testimony must be deemed true, Doe argues that we have jurisdiction to consider whether certain undisputed facts compelled the conclusion that he is entitled to relief under the Convention Against Torture. Because we reject the premise, we need not address whether Doe has posited a "question of law" within the meaning of 8 U.S.C. § 1252(a)(2)(D). *Cf. Lovan v. Holder*, 574 F.3d 990, 998 (8th Cir. 2009).

n.4 (8th Cir. 2009); *Etchu-Njang*, 403 F.3d at 583-84. In any event, the BIA applied the correct legal standard in dismissing Doe's administrative appeal. The Board concluded that Doe had failed to show that authorities in Mexico participated in or acquiesced in a prior attack, or that such authorities were likely to participate or acquiesce in such conduct in the future. Despite some lack of clarity in the IJ's statements, he too rejected Doe's CAT claim based on a failure of proof that Doe would be subjected to any form of torture upon return to Mexico. Neither the Board nor the IJ ultimately rested on a failure to show likelihood of torture based on an enumerated ground.

Doe also argues that the IJ applied an incorrect standard in determining whether Mexican public officials acquiesced in the attack he suffered in Mexico or likely would acquiesce in future torture. Doe relies on *Ramirez-Peyro v. Holder*, 574 F.3d 893 (8th Cir. 2009), in which this court stated that rogue police officers may acquiesce in torture, in their official capacities, if they breach a legal responsibility to intervene and "arrest themselves." *Id.* at 905. Even assuming that the IJ's analysis conflicts with *Ramirez-Peyro*, the BIA made no such error on administrative appeal. The BIA simply stated that Doe failed to show "that any authorities in Mexico participated in or acquiesced in his prior attack, or even were aware of it, or that such authorities would be more likely than not to participate or acquiesce in such conduct in the future." Thus, any error by the IJ was rendered harmless by the Board's application of a correct legal standard. *Singh v. Holder*, 591 F.3d 1190, 1198 (9th Cir. 2010); *see also Cortez v. Holder*, 400 F. App'x 116, 117 (8th Cir. 2010) (per curiam).

D.

Doe also argues that the BIA and the IJ deprived him of rights under the Due Process Clause of the Fifth Amendment. *See Reno v. Flores*, 507 U.S. 292, 306 (1993). To establish a due process violation, Doe "must demonstrate both a

fundamental procedural error and prejudice as a result of the error." *Camishi v. Holder*, 616 F.3d 883, 886 (8th Cir. 2010).

Aside from unpersuasive efforts to recharacterize his claims about credibility and persuasiveness as constitutional arguments, Doe raises two points. First, he objects to the BIA's alleged failure to address most of the issues that he briefed in his administrative appeal. But an alien has no constitutional right to a full-blown written opinion on every issue, *see Dia v. Ashcroft*, 353 F.3d 228, 240 n.7 (3d Cir. 2003), and each substantial issue raised by Doe was either addressed by the BIA or rendered irrelevant by the BIA's disposition of the appeal. Second, Doe argues that the IJ and the BIA violated his rights by failing to consider the scars that resulted from the beating he suffered in Mexico, employment documents from his time as a police officer, and the State Department's Country Reports on Human Rights Practices. "[A]n allegation of wholesale failure to consider evidence implicates due process," *Hanan v. Mukasey*, 519 F.3d 760, 764 (8th Cir. 2008), but the record shows that the IJ did consider this evidence. The IJ mentioned Doe's scars and the Country Reports, and discussed at length Doe's service as a police officer. A.R. 194-97, 204. The BIA is entitled to a presumption of regularity, *Averianova v. Holder*, 592 F.3d 931, 936 (8th Cir. 2010), and while it did not advert to this material, it is not required by the Constitution to mention every piece of evidence that it considered. *See Jin Yi Liao v. Holder*, 558 F.3d 152, 156 n.3 (2d Cir. 2009); *Sou v. Gonzales*, 450 F.3d 1, 8 n.15 (1st Cir. 2006). We thus conclude that Doe has not established a violation of his rights under the Due Process Clause.

*       *       *

Doe's unopposed motion to supplement the administrative record is granted. The petition for review is denied.

_____

-10-