# United States Court of Appeals
### for the Eighth Circuit

———————————————————

No. 19-2425

———————————————————

Ali Mohammed Juma Alzawed,

*Petitioner*

v.

William P. Barr, Attorney General of the United States,

*Respondent*

—————

Petition for Review of an Order of the Board of Immigration Appeals

—————

Submitted: May 12, 2020
Filed: July 31, 2020

Before COLLOTON and BENTON, Circuit Judges, and WILLIAMS,[1] District Judge.

WILLIAMS, District Judge.

Iraqi citizen Ali Mohammed Juma Alzawed petitions for review of the Board of Immigration Appeals' (BIA) order dismissing his appeal from an immigration judge's (IJ) decision denying deferral of removal under the Convention Against Torture (CAT). We deny the petition.

———————————————

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, sitting by designation.

According to Alzawed, between 1986 and 1989 Iraqi government officials tortured him on three occasions. Each occasion was tied to Alzawed's uncle, Sami Sadoon, who is a Sunni Muslim and at the time held a position in Saddam Hussein's government. On the first occasion, Iraqi government authorities detained Alzawed and other family members and tortured them for six months when Sadoon's son went absent without leave from the military. On another occasion, government officials tortured Alzawed when he refused to attend mandatory government-sponsored classes. On the third occasion, government officials detained and tortured Alzawed and other family members because of a suspicion that a family member was a communist. In 1991, Alzawed also saw a mob kill Sadoon's sons and Alzawed helped others gather wood with which to burn the bodies.

In 1995, Alzawed entered the United States as a refugee. On February 6, 2001, Alzawed was convicted in Missouri state court on two counts of child molestation in the first degree and was sentenced to seven years' imprisonment. On May 16, 2006, the Department of Homeland Security initiated removal proceedings against Alzawed based on his convictions. On October 24, 2006, an IJ denied Alzawed's request for a waiver of removal and his request for deferral of deportation under the CAT and ordered Alzawed removed to Iraq. Alzawed did not appeal.

In April 2010, Alzawed was convicted in California state court for possession of methamphetamine for sale, for which he was sentenced to two years in prison. In 2017, Alzawed was convicted in Missouri state court of domestic abuse assault in the second degree and unlawful use of a weapon, for which he was sentenced to four years in prison.

In January 2018, Alzawed moved to reopen proceedings, arguing that conditions in Iraq had changed substantially and again requested deferral of

deportation under the CAT. On January 29, 2018, an IJ denied Alzawed's requests. On July 30, 2018, the BIA reversed the IJ's decision and remanded the case for hearing.

In November 2018, an IJ held a hearing on Alzawed's requests. On December 17, 2018, the IJ issued a decision denying Alzawed's requests. The IJ found that because of res judicata, the 2006 decision precluded the IJ from considering a CAT deferral on facts raised in that proceeding. In the alternative, the IJ considered the merits of Alzawed's motion. Alzawed asserted four arguments as to why he might be tortured upon return. First, Alzawed argued Iraqi officials are suspicious of returnees with criminal records. Second, Alzawed cited his family's history of being targeted, the fact he is Shiite, and his long residency in the United States. Third, Alzawed argued Iraq has deteriorated due to ISIS. Last, Alzawed argued Sadoon still presents a threat to him based on statements his sister made to Alzawed in 2013 stating that she believed Sadoon was involved in the deaths of Alzawed's brothers in 2003 and 2006.

The IJ found these arguments relied on chains of assumptions and speculation and thus rejected them. First, as to Alzawed's criminal record, the IJ found he would have to presume Iraqi officials have access to such records, would look them up, would detain Alzawed, and would torture him. Second, the IJ found cultural and political shifts in Iraq made it unlikely Alzawed would be targeted due to his family history, religion, or association with the United States. Third, although the IJ acknowledged ISIS at one time severely impacted Iraq, he noted ISIS had now "waned" and lost much of its influence. Last, as to Sadoon, although the IJ found Alzawed's testimony credible, the IJ afforded the testimony less weight because of Alzawed's inability to remember details of his conversations with his sister, particularly the sister's basis of knowledge. Given the absence of corroborating evidence, the IJ found Alzawed failed to show it was more likely than not Sadoon

was alive, in power, seeking retribution, and able to execute it. In sum, the IJ deemed Alzawed's arguments to be hypothetical worst-case scenarios based on assumptions.

On January 15, 2019, Alzawed appealed the IJ's decision to the BIA. Alzawed argued res judicata did not apply and that he met his evidentiary burden. On June 5, 2019, the BIA dismissed Alzawed's appeal. The BIA agreed with Alzawed that res judicata did not apply because the proceedings were reopened and thus there was no final judgment. Nevertheless, the BIA agreed with the IJ that Alzawed's claims constituted a string of suppositions that did not meet the required burden.

## II.

When a case involves noncitizens who have committed any crime specified in 8 U.S.C. § 1252(a)(2)(C) our scope of review is limited to constitutional and legal challenges to the final order of removal. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1687-88, 590 U.S. __ (2020). We may, however, review a noncitizen's factual challenges to a CAT order. *Id.*, at 1688. We review administrative findings of fact, including credibility determinations, under the substantial-evidence standard. *Singh v. Gonzales*, 495 F.3d 553, 556 (8th Cir. 2007). We review legal questions de novo and afford the BIA's interpretation of its own statutes substantial deference. *Matul-Hernandez v. Holder*, 685 F.3d 707, 711-12 (8th Cir. 2012). When the BIA issues a separate opinion instead of summarily affirming, as it did here, we review the BIA's decision as the final agency determination. *Loulou v. Ashcroft*, 354 F.3d 706, 708 (8th Cir. 2003). To the extent the BIA adopted the IJ's reasoning, we also review the IJ's decision. *Davila-Mejia v. Mukasey*, 531 F.3d 624, 627 (8th Cir. 2008).

A petitioner is eligible for relief under CAT when the petitioner shows "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is defined as:

-4-

[A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . intimidating or coercing him or her . . . or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). To show acquiescence, a petitioner must show a public official was aware of torture by a third party and breached the legal responsibility to intervene. *Ramirez-Peyro v. Holder*, 574 F.3d 893, 904 (8th Cir. 2009).

On appeal to this Court, Alzawed raises three issues: (1) whether the BIA used the incorrect legal standard by not assessing the likelihood of Alzawed's various risks of torture in the aggregate, (2) whether the BIA denied Alzawed's due process rights by "allowing" the IJ to erroneously invoke res judicata, and (3) whether the BIA ignored and mischaracterized important evidence.

A.

Alzawed asserts that the BIA applied an incorrect legal standard because it did not evaluate the threat of torture in the aggregate, but, rather, considered each threat separately. The Court need not determine the correct standard here because Alzawed did not raise the aggregate risk argument before the BIA. We will not review claims raised for the first time in a petition for review. *Marambo v. Barr*, 932 F.3d 650, 654 (8th Cir. 2019) (finding that petitioner's "failure to raise [an] issue before the BIA means he has not exhausted his administrative remedies, and we are unable to review his claim for the first time on a petition for review."). "[O]ur Court has consistently recognized the preference to allow the agency an opportunity to correct its own mistakes." *Id.* at 655 (internal quotation and citation omitted). Because petitioner did not give the BIA an opportunity to address this claim, the Court will not consider that claim for the first time on appeal.

B.

The BIA did not deprive Alzawed of due process by allowing the IJ to invoke res judicata. The BIA correctly found that res judicata did not bar consideration of past torture Alzawed suffered in the 1980s. Any error by the IJ in concluding otherwise was harmless both because the IJ nevertheless considered that evidence and because the BIA also considered the evidence and applied the correct legal standard. *Doe v. Holder*, 651 F.3d 824, 831 (8th Cir. 2011) (finding "any error by the IJ was rendered harmless by the Board's application of a correct legal standard."). There is no reason to believe that were the court to remand this case that the outcome would be any different. *R.K.N. v. Holder*, 701 F.3d 535, 539 (8th Cir. 2012) (finding harmless error when petitioner failed to show that outcome would have been different if IJ had considered excluded evidence).

C.

Alzawed's argument that the BIA ignored and mischaracterized evidence fares no better. It is not for this Court to reweigh the evidence before the BIA on an order of final removal, but the Court can consider factual challenges to the CAT order deferentially. *Nasrallah*, 140 S. Ct. At 1688. "The standard of review is the substantial evidence standard: The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.*, at 1692 (quoting § 1252(b)(4)(B)). Remand is appropriate when an IJ and the BIA "fail [ ] to consider specific, direct, and credible evidence." *Yang v. Gonzales*, 427 F.3d 1117, 1118 (8th Cir. 2005).

Here, the IJ and BIA did not fail to consider specific, direct, and credible evidence. Rather, substantial evidence in the record supports the BIA's conclusion that Alzawed's argument that he would likely be tortured upon return to Iraq was based on a chain of assumptions and speculation.

Alzawed relies heavily on the declaration of his expert, Daniel W. Smith, who opined that Iraqi nationals deported from the United States and suspected of having criminal histories are likely to be detained and interrogated, and Iraqi security forces have historically and routinely used torture. (AR 551, 545). Mr. Smith based his opinion on a conversation with unidentified Iraqi immigration officials and a judge. The government rebutted this evidence with its own experts who opined that Mr. Smith's opinion was "farfetched" and based on an outdated understanding of events in Iraq. (AR 281-82, 286, 291-92). Those experts generally conceded that Iraqi officials will likely question Alzawed, their focus will be on whether Alzawed has ties to ISIS or Saddam Hussein's failed regime. The government's evidence specifically rebutted the assertion that Iraq is currently torturing its returning citizens for lack of proper documents or because of a criminal history. (AR 308-09, 311). Alzawed takes issue with the basis for the government's experts' opinions, but that is a matter of weighing the evidence left to the discretion of the BIA. Our review is limited to determining if there is a substantial basis for the BIA's factual findings, not to make our own factual finding or reweigh the evidence. *See Lemus-Arita v. Sessions*, 854 F.3d 476, 482 (8th Cir. 2017) (noting that in reviewing an IJ decision, "we are not at liberty to reweigh the evidence.") (quotation marks and citation omitted).

As for the threat allegedly posed by Alzawed's uncle, the BIA's decision is again supported by substantial evidence in the record. Alzawed relied on uncorroborated and vague hearsay from his sister about the threat Sadoon would pose to Alzawed because Sadoon was allegedly involved in the death of Alzawed's brothers years ago. The BIA correctly concluded that finding Sadoon posed a threat of torture under CAT would require assumptions that Sadoon was still alive, cared about Alzawed, and still occupied a government position. This is the type of speculative evidence and hypothetical threat that the BIA was well within its discretion in discrediting. *See Quinteros v. Holder*, 707 F.3d 1006, 1010 (8th Cir. 2013) (stating that a petitioner "must show that he is more likely than not to be

tortured if returned to the proposed country of removal and that fear of future persecution must be objectively reasonable and not speculative") (quotation marks and citations omitted).

Our careful review of the IJ's lengthy decision denying relief and the BIA's decision satisfy us that the BIA did not err. For all of the foregoing reasons, we deny the petition for review.

_____